UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| TAYNA FOGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 14-cv-203-JMH |
| v. | ) |
| | ) |
| BLUEGRASS AREA DEVELOPMENT | ) |
| DISTRICT, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*

This matter is before the Court upon the Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants Jennifer Compton and Bluegrass Workforce Investment Board ("WIB") [DE 3]. Plaintiff has filed a Response [DE 5], and Defendants have filed a Reply in further support of their Motion [DE 9]. Having considered Defendants' Motion, it shall be granted for the reasons stated below.

**I.**

When reviewing a Motion to Dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This presumption of truth, however, "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also

insufficient for a complaint to offer mere "labels and conclusions," or to provide a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Meeting this standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. And a complaint does not meet this standard if it pleads facts that are "merely consistent with" a defendant's liability. *Id*.

## II.

In order to evaluate the defendants' Motion to Dismiss, the Court accepts the following factual averments in Plaintiff's Complaint to be true. Plaintiff Fogle was employed by the Bluegrass Area Development District ("BADD") from December 15, 2009, through June 21, 2013, and Defendant Compton was her "immediate supervisor." [Compl., DE 1-1 at ¶¶ 6, 9.] During her employment, Fogle she received "good evaluations" of her work from 2009-2013. [*Id*. at ¶ 10.] Fogle's primary duties were "refining and directing a program focused on re-entry into the community for individuals about to be released from

correctional facilities, individuals with child support issues and ex-offenders with barriers to success and successful re-entry into their community." [*Id.* at ¶ 7.]

Prior to her employment by the BADD, in 2006, Fogle had designed and developed a program, then known as "A Vision for You" and later known as "Steppin to a New Beat." Fogle "gratuitously allowed [BADD] to the use of her 'Steppin to a New Beat' program during her employment so as to increase her effectiveness in achieving the desired outcomes of her employer." The program "assisted individuals with employment and housing opportunities." [*Id.* at ¶ 8.]

In February 2012, Plaintiff "raised questions about individuals who had enrolled in her 'Steppin to a New Beat' program who were not participating yet were still being counted as active participants." [*Id.* at ¶ 11.] Then, on January 15, 2013, "Defendant received a complaint concerning the Plaintiff's supervision of the housing program." [*Id.* at ¶ 12.] She avers that she was questioned about the complaint and was told that "there were allegations against her by Defendant David Duttlinger, Executive Director of the Bluegrass Area Development District on April 24, 2013," which she denied. [*Id.* at ¶¶ 13-14.] She claims that she was suspended with pay on April 24, 2013 "after Defendant received a complaint that the Plaintiff was accepting rent for housing as part of the participation in

the 'Steppin to a New Beat' program." [*Id.* at ¶ 15.] An investigation was undertaken and she was informed on May 13, 2013, that the investigation was complete and that she could return to work by Director Lenny Stolz. [*Id.* at ¶¶ 16-17.] However, the Board of Directors did not accept the decision to allow her to return to work and her employment was terminated on June 21, 2013. [*Id.* at ¶¶ 18-19.]

Plaintiff requested a grievance hearing to contest the termination of her employment sometime between June 28 and July 1, 2013. [*Id.* at ¶ 20.] She avers that "Defendant" initially alleged that she "had never requested a hearing" but eventually the "request for a hearing was denied by the Defendant." [*Id.* at ¶ 21.] She had neither a pre-termination or post-termination hearing. [*Id.* at ¶ 22.]

Plaintiff filed her Complaint in Fayette Circuit Court on April 23, 2014, and it was removed to this Court on May 23, 2014. On facts set forth, in Count 1 of her Complaint, Plaintiff claims that she was wrongfully discharged in violation of public policy by BADD because "she reported to her supervisors the questionable bookkeeping practices of Defendant regarding individuals enrolled but not actively participating in the 'Steppin to a New Beat' program" and that "Defendant retaliated against" her by "placing her on administrative leave and ultimately terminating her [employment]" and "attempting to

delay her receipt of retirement funds to which she was entitled." [*Id.* at ¶¶ 25-27.]

Plaintiff next claims, in Count 2, that she was denied procedural due process under the Fourteenth Amendment to the United States Constitution and Section 2 of the Constitution of the Commonwealth of Kentucky in the absence of pre- or post-termination procedure. [*Id.* at 37-39.] She explains that, "[a]t the time of her discharge, Plaintiff was told that she was being terminated for removing files from her office" but, "[a]t no time prior to [her] discharge were the allegation[s] of removing files discussed with her by the Defendant." [*Id.* at ¶¶ 32-33.] Further, she claims, "[s]ubsequent to Plaintiff's dismissal, the Plaintiff requested a grievance hearing pursuant to the Defendant's personnel manual" which "request was denied by the Defendant." [*Id.* at 34-35.] She argues that as a result of her employment with "Defendant as a public entity," she had a legitimate expectation of continued employment" and "a Constitutionally protected property interest in her employment with the Defendant which could only b[e] taken pursuant to Due Process." [*Id.* at 36-37.]

In Count 3, she claims that she was defamed on June 19 and October 2013, when Defendants Duttlinger and Compton "caused to be published and disseminated a notice to approximately 300 persons that Plaintiff had misappropriated funds and compromised

personal information" and that Duttlinger "disseminated" the publication "without an adequate investigation to determine the truth" resulting in injury to her reputation in the community. [*Id.* at ¶¶ 42-44.]  Finally, in Count 4, Plaintiff complains that she "gratuitously allowed [BADD] the use of her 'Steppin to a New Beat' program during her employment so as to increase her effectiveness in achieving the desired outcomes of her employer" and that BADD and Compton gave the program to WIB.  [*Id.* at ¶¶ 49-50.]  Because she "never conveyed any of her rights" to the program nor "g[a]ve [n]or convey[ed] any license to utilize such program to Defendants in any shape, form or fashion without her direct participation and supervision" to Defendants and received "no consideration" for their use of it despite their continued use of the program, she claims that Defendants' continued use of the "Steppin to a New Beat" program, held out to the community as their own, has caused her economic injury and damage to her reputation in violation of the Fifth Amendment to the United States Constitution and Section 13 of the Constitution of the Commonwealth of Kentucky.

### III.

In Count 1 of the Complaint, Plaintiff alleges wrongful termination of her employment by BADD in violation of public policy.  She does not, however, allege that the reason for her discharge was either (1) the failure or refusal to violate a law

in the course of employment or (2) the employee's exercise of a right conferred by well-established legislative enactment. *See Grzyb v. Evans*, 700 S.W.2d 399, 401-02 (Ky. 1985). In her Response, Plaintiff appears to concede that her Complaint is lacking because, for the first time, she avers that her discharge was contrary to the public policies evidenced by "the Kentucky Whistleblower Act, KRS 61.101 . . . and the Kentucky Civil Rights Act, KRS 344.280." [DE 7-1 at 3-4.]

This does not help her cause, for, as recently explained in the Western District of Kentucky,

> Where a statute or legislative enactment declares an act unlawful *and* specifies the civil remedy available to the aggrieved party, the aggrieved party is bound by the statutory remedy. *See Grzyb*, 700 S.W.2d at 401; *see also Harvey*, 672 F. Supp. at 976. If the statute also provides structure for pursuing the claim, the aggrieved party is limited to that structure. *Harvey v. I.T.W., Inc.*, 672 F. Supp. 973, 976 (W.D. Ky. 1987). In other words, the same statute that could provide the underpinnings of a wrongful discharge claim cannot do so if it also structures the remedy.

*Wiseman v. Whayne Supply Company*, 359 F. Supp. 2d 579, 591 (W.D. Ky. 2004) (emphasis in original). Here, both the Kentucky Whistleblower Act and the Kentucky Civil Rights Act provide remedies for any violation. *See* KRS 61.103; KRS 344.450. It follows that she may not seek relief for wrongful termination under *Grzyb*, as alleged in her Complaint, because the statutes

which create the public policy on which she relies, per her Response, specify the civil remedy for a violation. *Grzyb*, 700 S.W. 2d at 401. Her claim in Count I shall be dismissed.

## IV.

Count 2 of the Complaint, in which Plaintiff alleges a denial of due process, must be dismissed because Fogle does not assert facts that give rise to a property interest in her employment. To succeed on her Fourteenth Amendment due process claim, Plaintiff must first establish that she enjoyed a property interest in her position and then, that she was "afforded the procedures to which government employees with a property interest in their jobs are ordinarily entitled." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 620 (6th Cir. 2013) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).

Defendants' motion to dismiss focuses solely on the first prong, whether Plaintiff had a property interest in her position. "Government employment amounts to a protected property interest when the employee has a legitimate expectation of continued employment." *Curby v. Archon*, 216 F.3d 549, 553 (6th Cir. 2000) (internal quotation and citation omitted). Whether Plaintiff has a protected property interest, or legitimate expectation of continued employment in her position is determined by state law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In Kentucky, it is presumed that

employment is at-will unless the parties "clearly stat[e] their intention" to agree otherwise. *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491-492 (Ky. 1983); *see also McDonald v. Webasto Roof Sys., Inc.*, 570 F. App'x 474, 477 (6th Cir. 2014) (interpreting Kentucky law). A public employee claiming a property interest in their employment "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Bailey v. Floyd Cnty Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997). "Neither mere government employment nor an abstract need or desire for continued employment will give rise to a property interest." *Id.* at 141 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Gregory v. Hunt*, 24 F.3d 781, 787 n. 4 (6th Cir. 1994)).

Thus, Fogle must identify either identify a state statute or a contractual right conferred by the government that supports a legitimate claim to continued employment. *Id*. at 141. She has identified no statute nor has she identified an agreement with her government employer which manifests any intention to condition termination only according to express terms, meaning that her employment is considered "at will" and that she was subject to dismissal at any time. *Id.* (citing *Shah*, 655 S.W. 2d at 491; *Nork v. Fetter Printing Co.*, 738 S.W.2d 824, 826-27 (Ky. Ct. App. 1987); *Gryzb*, 700 S.W.2d 399 (Ky. 1985)). An "at will"

employee cannot effectively claim a protectable property interest in her job. *Id.*

According to Ms. Fogle:

> Plaintiff is at the stage of litigation unable to determine the precise basis for her Constitutional rights to a pre or post termination hearing in that the distinction between Defendants Bluegrass Area Development District and its executive director, Mr. David Duttlinger and Defendants Jennifer Compton and the Bluegrass Workforce Investment Board, both jointly and severally due to the fact that it appears the operational breakdown and separation between these legal entities is impermissibly vague and possibly unlawful.

[Response, D.E. No. 7-1, p. 4]. This is not enough. Regardless of whether BADD or the WIB employed Ms. Fogle, she can only maintain her due process claim if she can identify a statute or contract that created the right which she seeks to vindicate. Fogle has not done so, and, her Complaint fails to state a due process claim under the Fourteenth Amendment to the United States Constitution. This claim shall be dismissed. Because the Kentucky Constitution provides the same protection as the United States Constitution, and the court finds dismissal warranted under the latter, Plaintiff's claim under sections 2 of the Kentucky Constitution will be dismissed as well for failure to state a claim.

V.

Defendant argues that Count 3 of the Complaint, which alleges defamation, fails to state a claim because Fogle does not allege any element of a defamatory act – a publication, falsity, or statements about Fogle – by WIB or Compton. In Count 3, Fogle claims that she was defamed on June 19 and October 2013, when Defendants Duttlinger and Compton "caused to be published and disseminated a notice to approximately 300 persons that Plaintiff had misappropriated funds and compromised personal information" and that Duttlinger "disseminated" the publication "without an adequate investigation to determine the truth" resulting in injury to her reputation in the community. [*Id.* at ¶¶ 42-44.]

Defamation under Kentucky law requires (1) defamatory language (2) about the plaintiff (3) which is published and (4) which causes injury to reputation. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (citing *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)). Defamatory language is that which "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (citing Restatement (2d) of Torts § 559 (1997)). Publication occurs when the language in question is "intentionally or negligently communicated to someone other than

the party defamed." *Id.* at 794 (citing Restatement (2d) of Torts § 577 (1977)).

In support of their Motion, Defendants have attached a copy of a letter written on June 19, 2013, and addressed to approximately 268 "Steppin to a New Beat" program participants, which discussed a disclosure of the personal information.[1] See *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.") (citing *Amini v. Oberlin Co.*, 259 F.3d 493, 502 (6th Cir. 2001)). This letter does not reference anyone by name, i.e., the source of the disclosure of personal information in an identifiable way, let alone Fogle. There is no way for a reader to determine from the letter itself whether the disclosures identified were made by Fogle or that the letter is about Fogle in any way. Thus, even if the letter is attributable to either Compton or the WIB, Plaintiff's claim fails because, as alleged, she does not set forth sufficient allegations to state a basis for her claim.

---

[1] Defendants represent that this notice was the communication made to members about the issue and to which Plaintiff refers in her Complaint. Plaintiff neither objects to this characterization nor makes any response to Defendant's argument about this issue in her Response. Accordingly, the Court presumes the notice to be the communication referenced in her defamation claim.

**VI.**

Count 4 of the Complaint, which alleges a taking without just compensation, fails to state a claim as she does not allege facts sufficient to establish that she had a protected property interest in the "Steppin' to a New Beat" program. In her Response she clarifies that she is not alleging that she did not reduce the elements of the program to a tangible medium of expression and that she is asserting a claim for taking that is based on the fact that "Steppin to a New Beat" is her "personal property." She argues that Defendants' argument that she has failed to allege sufficient facts to establish that "Steppin to a New Beat" is a copyrighted work that she owns is "overly narrow and wholly obfuscates" the taking of which she complains. The Court disagrees.

Fogle's claim is simple – she avers that "Steppin' to a New Beat" is her creation and, thus, her intellectual property subject to the prohibition against governmental taking for public use without "just compensation." U.S. Constitution, Amend. IV. She does not however, set forth any contract, licensing agreement, or even an interest protected by copyright, for example, which could serve as the basis for some sort of cognizable interest in the intellectual property which she freely provided to her employer – whether the Court understands that intellectual properties to be the ideas and methods behind

the program or some sort of fixed iteration of the program. While she describes how she used this program of her own creation in her role with WIB to provide services to individuals who enrolled in it, she provides no example of steps that she took to secure her interest in any intellectual property which comprises the program. Thus, while she avers that, after her discharge, either or both WIB and BADD continued to operate "Steppin' to a New Beat," the Court can find no actionable wrong.

While a copyright interest could serve as the basis for a claim under the Takings Clause, she does not allege that she fixed her ideas for the program into a "tangible medium of expression" and that she did so outside the scope of her employment with BADD, both of which would be required to establish a valid copyright interest. Moreover, as explained by Defendants copyright preemption generally bars Ms. Fogle from asserting other claims seeking to protect any intellectual property rights in a work that is within the subject matter of the copyright act, even if that work is not actually entitled to copyright protection because it is not yet fixed in a tangible medium of expression. *U.S. ex rel. Berge v. Board of Trustees of the University of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997) (cited with approval in *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001)). The only claims not barred by

copyright preemption are the aforementioned takings clause claim, or a state law claim that is "qualitatively different from a copyright infringement claim," such as a claim for wrongful retention of the physical object embodying the work rather than the intellectual property itself. *Cawley v. Swearer*, 936 F.2d 572 (6th Cir. 1991) (table case) (per curiam); *Berge*, 104 F.3d at 1463.

Any alleged takings clause claim, whether under the Fourteenth Amendment of the United States Constitution or Section 13 of the Kentucky Constitution, fails for the reasons set forth above, and Ms. Fogle has neither identified nor alleged any facts in support of any permitted state law claim. Thus, Count 4 shall be dismissed.

### VII.

Having considered Defendants' Motion to Dismiss in light of the arguments of the parties, it shall be granted.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss [DE 3] is **GRANTED**.

This the 30th day of March, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge